## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:16-cv-60691-WJZ

WERTEKS CLOSED JOINT STOCK
COMPANY, d/b/a WERTEKS
PHARMACEUTICAL COMPANY, and
THERMOLIFE INTERNATIONAL, LLC,

      Plaintiffs,

v.

VITAMIN SHOPPE, INC. and VITAL
PHARMACEUTICALS, INC., d/b/a VPX,

      Defendants.

_____

### DEFENDANT VITAL PHARMACEUTICALS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) FOR LACK OF STANDING AND SUPPORTING MEMORANDUM OF LAW

**TABLE OF CONTENTS**

**Page**

I.    BRIEF STATEMENT OF THE FACTS ......................................................................... 1

II.   ARGUMENT .............................................................................................................. 2

     A.   Legal Standard for Dismissal Under Fed ........................................................... 2

     B.   Without Werteks as a Party, ThermoLife Lacks Standing to Sue Vital for
         Infringement of the '077 Patent ......................................................................... 5

         1.   The ThermoLife-Werteks License Agreement Is a Limited "Field
            of Use" Agreement ................................................................................. 5

         2.   The ThermoLife-Werteks License Agreement Conveys Limited
            Sublicensing Rights ............................................................................... 7

         3.   The ThermoLife-Werteks License Agreement Restricts
            ThermoLife's Rights of Assignment and Transferability .......................... 7

         4.   The ThermoLife-Werteks License Agreement Provides Werteks
            Rights and Benefits in the Underlying Invention ..................................... 8

         5.   The ThermoLife-Werteks License Agreement Provides Werteks
            the Right to Enjoy Continued Economic Gains and Proceeds
            Relating to the Patent ............................................................................. 9

         6.   The ThermoLife-Werteks License Agreement Provides Werteks
            the Right to Sue Alleged Infringers ......................................................... 9

         7.   The ThermoLife-Werteks License Agreement Provides Werteks
            the Right to Terminate the Agreement ................................................... 10

III.  CONCLUSION ......................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010)............................................................................6, 12

*Alps S., LLC v. Ohio Willow Wood Co.*,
   787 F.3d 1379 (Fed. Cir. 2015)...........................................................................8

*Bluestone Innovations LLC v. Nichia Corp.*,
   No. C 12-00059 SI, 2013 WL 1729814 (N.D. Cal. Apr. 22, 2013)........................8

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
   357 F.3d 1266 (Fed. Cir. 2004).............................................................................7

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
   504 F.3d 1273 (Fed. Cir. 2007)...........................................................................6, 8

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001).............................................................................6

*IRIS Corp. Berhad v. United States*,
   82 Fed. Cl. 488 (2008) .......................................................................................4

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ...........................................................................5

*Media Techs. Licensing, LLC. v. Upper Deck Co.*,
   334 F.3d 1366 (Fed. Cir. 2003).............................................................................5

*MSPA Claims 1, LLC v. United Auto. Ins. Co.*,
   204 F. Supp. 3d 1342 (S.D. Fla. 2016) ................................................................7

*Mulhall v. UNITE HERE Local 355*,
   618 F.3d 1279 (11th Cir. 2010) ...........................................................................5

*Myers Investigative And Sec. Servs., Inc. v. United States*,
   275 F.3d 1366 (Fed. Cir. 2002).............................................................................4

*Porto Tech., Co. v. Cellco P'ship*,
   No. 3:12CV678-HEH, 2013 WL 1155592 (E.D. Va. Mar. 19, 2013).....................9

*Propat Int'l Corp. v. Rpost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007)...................................................................... *passim*

-ii-

**TABLE OF AUTHORITIES**
(continued)

Page

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005)..................................................................10

*Sream, Inc. v. K & R of WPB, Inc.*,
    No. 17-CV-80222, 2017 WL 6409014 (S.D. Fla. May 9, 2017).............................5

*Textile Prods., Inc. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998)..................................................................6

*Vaupel Textilmaschinen v. Meccanica Euro Italia*,
    944 F.2d 870 (Fed. Cir. 1991)...................................................................6

**Statutes**

35 U.S.C. § 100(d) .................................................................................6

35 U.S.C. § 281 ................................................................................4, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...................................................................*passim*

Fed. R. Civ. P. 12(b)(7)...............................................................................4

Fed. R. Civ. P. 56 .................................................................................5

Fed. R. Evid. 201 ...............................................................................5, 6

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant Vital Pharmaceuticals, Inc. ("Vital"), by and through undersigned counsel, respectfully submits its Motion to Dismiss ThermoLife International, LLC's ("ThermoLife") First Amended Complaint for lack of standing and supporting Memorandum of Law.

## I.   BRIEF STATEMENT OF THE FACTS

On November 21, 2016, Plaintiffs Werteks Closed Joint Stock Company, d/b/a Werteks Pharmaceutical Company ("Werteks") and ThermoLife filed a First Amended Complaint alleging patent infringement of U.S. Patent No. 8,350,077 (the '077 patent") by Vital.  (DE 34).  According to the allegations in the First Amended Complaint, Werteks is the owner of the '077 patent (DE 34 at ¶¶ 7, 14, 17), and ThermoLife is an exclusive licensee (*id*. at ¶¶ 7, 16, 17).  While the First Amended Complaint is deficient, insofar that it merely alleges the existence of a license agreement without either disclosing certain of its material terms or attaching a true and correct copy of it as an exhibit, a redacted copy of the "Exclusive Patent License Agreement" between Werteks and ThermoLife, dated March 11, 2014 ("License Agreement") has been provided to Vital and its undersigned counsel by ThermoLife.  Declaration of Francis DiGiovanni ("DiGiovanni Decl.") ¶ 2 and Ex. A.

Werteks did not transfer all substantial rights in the '077 patent to ThermoLife under the License Agreement.  Rather, Werteks granted to ThermoLife a limited "field of use" license. Agreement §§ 1.2, 2.1.  The License Agreement also conveyed limited sublicensing rights to ThermoLife (Agreement §§ 2.2, 3.1) and restricted its rights of assignment and transferability (Agreement §§ 10.1, 10.2, 10.3).  The License Agreement further provides Werteks's rights and benefits in the underlying invention (Agreement § 8.1), as well as rights to enjoy continued economic gains and proceeds relating to the '077 patent (Agreement §§ 4.2, 8.4).  In addition, Werteks retained rights to sue alleged infringers (Agreement §§ 2.3, 8.3) and rights to terminate

the License Agreement (Agreement § 9.3).   Accordingly, as explained herein, Werteks is a necessary party to this litigation.[1]

On March 15, 2019, the Court dismissed Werteks's cause of action against Vital due to Werteks's failure to abide by the Court's prior Order (DE 87).   Werteks is, therefore, no longer a party to this action.   Because Werteks is a necessary party under the terms of the License Agreement, ThermoLife cannot proceed on its own, and its claims against Vital should be dismissed for lack of standing.   Accordingly, based on this new and changed circumstance, Vital is making this Motion to Dismiss.

## II.   ARGUMENT

### A.   Legal Standard for Dismissal Under Fed. R. Civ. P. 12(b)(1)

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing.   Standing in a patent infringement case derives from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent."   35 U.S.C. § 281. "[S]tanding is a threshold jurisdictional issue."   *Myers Investigative And Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002).   "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]."   *Id.*   "Standing to sue is a threshold jurisdictional requirement in every federal action, and standing must be present at the time the suit is brought."   *IRIS Corp. Berhad v. United States*, 82 Fed. Cl. 488, 495 (2008), citing *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005).   "Because standing is

---

[1] It should be noted that ThermoLife previously filed a patent infringement Complaint against Vital under the same patent at issue in this case without Werteks as a co-plaintiff.  *See* DE 1 in Civ. No. 0:14-cv-61864-WJZ (S.D. Fla.).  Vital promptly moved to dismiss that Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(7), arguing that Werteks was a necessary plaintiff.  *See* DE 12 in Civ. No. 0:14-cv-61864-WJZ (S.D. Fla.).  In response, ThermoLife joined Werteks as a plaintiff and an Amended Complaint was filed.  *See* DE 16 in Civ. No. 0:14-cv-61864-WJZ (S.D. Fla.).  Thus, ThermoLife has been on notice since at least May 2014 that Werteks is a necessary plaintiff.

jurisdictional, lack of standing precludes a ruling on the merits." *Media Techs. Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003).

A party can move to dismiss a claim under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *Sream, Inc. v. K & R of WPB, Inc.*, No. 17-CV-80222, 2017 WL 6409014, at *1 (S.D. Fla. May 9, 2017) (*citing McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007)). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quotations and citations omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using extrinsic evidence, such as affidavits or testimony. *Id.* (*citing McElmurray*, 501 F.3d at 1251). "[W]hen the attack is factual . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Under a factual attack, "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

"[I]n resolving a motion to dismiss, a court may consider materials subject to judicial notice without converting the motion to dismiss into a motion for summary judgment." *Id.* at *3 (*citing Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-78 (11th Cir. 1999)); *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Federal Rule of Evidence 201 permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it[ ] ... can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. (*citing* Fed. R. Evid. 201(b)).

Only a "patentee" may bring an action for patent infringement.  35 U.S.C. § 281; *Vaupel Textilmaschinen v. Meccanica Euro Italia*, 944 F.2d 870 (Fed. Cir. 1991); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1483 (Fed. Cir. 1998) (*citing* 35 U.S.C. § 281).  The term "patentee" comprises "not only the patentee to whom the patent was issued but also the successors in title to the patent." 35 U.S.C. § 100(d).  It is well established that "[a] licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds '**all substantial rights' under the patent**." *Textile Prods.*, 134 F.3d at 1484 (emphasis added) (*citing Vaupel Textilmaschinen KG*, 944 F.2d at 875); *see also Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007).  That is, "[e]ither the licensor did not transfer 'all substantial rights' to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer 'all substantial rights' to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own."  *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d. 1354, 1359-60 (Fed. Cir. 2010).

"A grant of all substantial rights in a patent amounts to an assignment—that is, a transfer of title in the patent—which confers constitutional standing on the assignee to sue another for patent infringement in its own name."  *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (citations omitted).  "An exclusive license that does not have all substantial rights has standing to sue third parties only as a co-plaintiff with the patentee." *Textile Prods.*, 134 F.3d at 1484.

To determine whether a licensee has "all substantial rights," courts "look to the agreement between the parties and analyze the respective rights allocated to each party under that agreement."

*Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007).  A licensee has the burden of demonstrating that it has "all substantial rights" to a patent and, thus, may file a patent infringement lawsuit without joint the patent owner.  *See Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004) (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) ("Fieldturf asserts that it has standing to enforce the '283 patent against third parties not because it is the patentee or a successor in title to the patentee, but rather because it is an exclusive licensee.  Consequently, it has the burden to provide evidence endowing it with all substantial rights in the patent.")).

    **B.**    **Without Werteks as a Party, ThermoLife Lacks Standing to Sue Vital for Infringement of the '077 Patent**

ThermoLife has not demonstrated, and cannot demonstrate, it has all substantial rights to the '077 patent.  All ThermoLife alleges in the First Amended Complaint is that it is "an exclusive licensee," without providing the license or any other facts.  (DE 34 at ¶¶ 7, 16, 17).  ThermoLife fails to meet its burden.  Several aspects of the License Agreement[2] unequivocally demonstrate that Werteks (the patent owner) did <u>not</u> transfer "all substantial rights" to ThermoLife (the licensee).

    **1.**    **The ThermoLife-Werteks License Agreement Is a Limited "Field of Use" Agreement**

The License Agreement does not grant ThermoLife "all substantial rights" because it is limited to a **specific field of use**.  Specifically, the License Agreement grants ThermoLife "an

---

[2] The ThermoLife-Werteks License Agreement is included as Exhibit A to the DiGiovanni Declaration.  It has also previously been filed in this Court.  *See* DE 13-1 in Civ. No. 0:14-cv-61864-WJZ (S.D. Fla.) at Ex. E.  The License Agreement can be considered by the Court on a motion to dismiss.  *See MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342, 1344 (S.D. Fla. 2016) (granting Rule 12(b)(1) motion to dismiss for lack of standing, stating that "[t]he Court may, however, take judicial notice of the full, unredacted copy of the [assignment] agreement that was filed in another lawsuit").

exclusive license under the Licensed Patent *in the Licensed Field of Use* to make, have made, use, import, offer to sell and sell Licensed Product in the Licensed Territory." Agreement § 2.1 (emphasis added). The "Licensed Field of Use" is defined in the License Agreement as "nutraceuticals, foods, and pharmaceuticals." *Id.* at § 1.2. The licensed field is clearly restricted. Accordingly, the patent owner, Werteks, retained for itself the exclusive right to use the '077 patent for all other types of uses, including the right to grant licenses in those other fields to other parties.

Federal Circuit caselaw establishes a "clear rule for cases involving licenses with field of use restrictions." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015). Specifically, "[Federal Circuit] standing jurisprudence 'compels an exclusive licensee with less than all substantial rights, *such as a field of use licensee,* to join the patentee before initiating suit.'" *Id.* (emphasis in original). In view of the Federal Circuit's "clear rule," the License Agreement's Field of Use restriction is dispositive; ThermoLife was not granted "all substantial rights." *See also Int'l Gamco*, 504 F.3d at 1274 (noting that "an exclusive enterprise license, like a field of use license, does not hold all substantial rights in the licensed patent within the licensed territory"). Thus, "[t]he holder of only an exclusive field of use license may not sue in its own name because 'allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement.' Thus, the 'prudential standing requirement compels an exclusive licensee with less than all substantial rights, such as a field of use licensee, to join the patentee before initiating suit.'" *Bluestone Innovations LLC v. Nichia Corp.*, No. C 12-00059 SI, 2013 WL 1729814, at *3 (N.D. Cal. Apr. 22, 2013) (citations omitted). Because Werteks is no longer a party to this case, ThermoLife lacks standing to proceed.

### 2.    The ThermoLife-Werteks License Agreement Conveys Limited Sublicensing Rights

In addition, ThermoLife only has a limited right to sublicense, thus it does not have "all substantial rights." Specifically, ThermoLife's right to sublicense is limited to only the "Licensed Field of Use." *See* Agreement at §§ 2.2 ("The license is Exclusive, including the right to Sublicense under Article 2, in the Licensed Field of Use . . . ."); 3.1 ("ThermoLife may grant non-exclusive Sublicenses in the Licensed Field of Use . . . ."). In fact, even in the limited field of use where ThermoLife has the ability to sublicense, it is highly restricted, being conditioned upon there being no objections by Werteks. *See id.* at § 3.1 ("ThermoLife may grant non-exclusive Sublicenses . . . in the absence of objection [sic] Vertex specific sublicense."). The sublicensing restrictions indicate that ThermoLife does not have "all substantial rights" to the '077 patent. *See, e.g., Propat Int'l Corp.*, 473 F.3d at 1191 ("Authentix's right to veto licensing . . . decisions also constitutes a significant restriction on Propat's interest in the patent."); *Porto Tech., Co. v. Cellco P'ship*, No. 3:12CV678-HEH, 2013 WL 1155592, at *3 (E.D. Va. Mar. 19, 2013) ("Even setting aside the absence of a specific right to practice or enforce the patent, the restriction on Porto's right to sublicense, coupled with the patent owner's retained right to independently license the patent, defeat constitutional, precedential and statutory standing.").

### 3.    The ThermoLife-Werteks License Agreement Restricts ThermoLife's Rights of Assignment and Transferability

ThermoLife's limited right to assign the License Agreement to others further demonstrates that ThermoLife does not have "all substantial rights" to the '077 patent. Under the License Agreement, ThermoLife may assign the License Agreement only "as part of a sale or change of control" in ThermoLife's business. Agreement § 10.1. Even in this narrow circumstance, "ThermoLife must give Vertex 30 days prior written notice of the assignment" and "the new assignee must agree in writing to Vertex to be bound by the Agreement." *Id.* at § 10.3. "Any other

7

attempt to assign th[e] Agreement by ThermoLife is ***null and void***." *Id.* at § 10.2 (emphasis added).

The Federal Circuit has held that "[t]he right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the licensee] all substantial rights under the patent." *Propat Int'l Corp.*, 473 F.3d at 1191 (citing *Sicom Sys. Ltd.*, 427 F.3d at 979; *Intellectual Prop. Dev.*, 248 F.3d at 1345; *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995)). In *Sicom Systems*, the Federal Circuit agreed with the district court's finding that the restraint on transferability of the rights under the agreement was "fatal" to the argument that the agreement transferred all substantial rights in the patent. *Sicom Sys. Ltd.*, 427 F.3d at 979. The same is true here. The restraints on transferability set forth in the License Agreement are fatal to ThermoLife's argument that it has "all substantial rights." Thus, it is evident that ThermoLife's right to assign the License Agreement is limited insofar that it cannot assign it to a third party unless that third party is a legal successor-in-interest to ThermoLife's entire business or that part of its business that exercises all rights granted under the License Agreement. Accordingly, because Werteks retained control of the right to assign, sublicense, and transfer the rights granted under the License Agreement, ThermoLife does not possess all substantial rights in the '077 patent.

### 4.    The ThermoLife-Werteks License Agreement Provides Werteks Rights and Benefits in the Underlying Invention

Werteks' general retention over rights to the invention favors a determination that ThermoLife does not have all substantial rights to the '077 patent. Werteks retained broad and extensive rights with respect to the underlying invention. The License Agreement states that ThermoLife is responsible for preparing, filing, and prosecuting "broad and extensive patent claims (including any interference or reexamination actions) ***for Vertex's benefit*** in the Licensed Field of Use, within the Licensed Territory, and for maintaining the Licensed Patent." Agreement § 8.1

(emphasis added).  When a patentee retains such rights in the underlying invention, courts find that all substantial rights have not been transferred.  *See Propat Int'l Corp.*, 473 F.3d at 1190 ("[T]he right granted to Propat with respect to the invention is not exclusive, because Authentix retains the right to seek new patents on the underlying invention and therefore retains an implicit right to use the invention.").

> ### 5.     The ThermoLife-Werteks License Agreement Provides Werteks the Right to Enjoy Continued Economic Gains and Proceeds Relating to the Patent

Werteks's right to enjoy continued economic gains shows that ThermoLife did not acquire all substantial rights in the '077 patent.  Under the License Agreement, at § 8.4, "[a]ny recovery from an infringement suit will be treated as Net Sales and subject to the earned royalty calculation set forth in Article 4.2 . . . ."  Section 4.2 reads as follows:  "Earned Royalty, 'ThermoLife' shall pay to 'Vertex' an earned royalty of [redacted] of net sales, whether from the sale of Licensed Products by 'ThermoLife' or its sublicensees or royalties for the sale of sub-licenses."  The Federal Circuit has made it clear that "the fact that [the patentee] retains a substantial share of the proceeds is consistent with [the patentee's] retaining ownership rights in the patent, while allocating to [the licensee] the duty to provide licensing and enforcement services."  *Propat Int'l Corp.*, 473 F.3d at 1191 (Fed. Cir. 2007).

> ### 6.     The ThermoLife-Werteks License Agreement Provides Werteks the Right to Sue Alleged Infringers

Werteks's retention of the right to sue alleged infringers shows that ThermoLife does not have "all substantial rights."  The License Agreement provides that "ThermoLife has the right to institute suit against any Infringer of a Licensed Patent" (Agreement § 8.3), but it does not state that ThermoLife has the *exclusive* right to do so, and it does not eliminate Werteks' right to do so. In fact, the License Agreement explicitly states that "Vertex ***does not***:  (A) grant to ThermoLife any . . . other rights of 'Vertex' other than those rights granted under Licensed Patent; (B) commit

to 'ThermoLife' to bring suit against third parties for infringement; and (C) agree to furnish to ThermoLife any technology or technological information or to provide ThermoLife with any assistance." *Id.* at § 2.3 (emphasis added). "Under the prior decisions of [the Federal Circuit], the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent." *Alfred E. Mann Found. For Sci. Research*, 604 F.3d at 1361. ThermoLife does not hold *the exclusive right* to sue. It merely has *a partial right* to institute litigation, as does Werteks, because Werteks never relinquished *its own right* to institute litigation against alleged infringers. Thus, ThermoLife does not have standing to sue by itself.

### 7. The ThermoLife-Werteks License Agreement Provides Werteks the Right to Terminate the Agreement

Werteks's retention of termination rights are relevant to the determination that ThermoLife does not have "all substantial rights." Werteks retained the right to terminate the License Agreement if ThermoLife fails to pay fees, does not provide reports, or breaches any provision of the License Agreement, in which case "ThermoLife loses all rights to use the patent and Licensed Product." Agreement § 9.3. These rights are additional indicators that Werteks did not grant "all substantial rights" to ThermoLife. *See Propat Int'l Corp.*, 473 F.3d at 1191-92 ("Authentix's power to terminate the agreement and end all of Propat's rights in the patent if Propat fails to perform up to the specified benchmarks, although not dispositive, is yet another indication that Authentix retains a significant ownership interest in the patent.").

### III. CONCLUSION

In view of the expansive rights retained by Werteks under the field of use License Agreement, ThermoLife was not granted "all substantial rights" and thus lacks standing to sue in its individual capacity, without Werteks joining as a party. The Court should dismiss this action under Fed. R. Civ. P. 12(b)(1) on the grounds that ThermoLife does not have standing under the Patent

Act to assert a claim for infringement under the '077 patent as a sole plaintiff and, therefore, lacks

standing to pursue the litigation without Werteks.

### LOCAL RULE 7.1(A)(3) CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Vital has made reasonable efforts

to confer with all parties who may be affected by the relief sought in the motion.  A telephonic

meet and confer was held on March 21, 2019 between counsel for the parties, during which the

grounds for the Motion were discussed.  Counsel for ThermoLife did not consent to the requested

relief.


Dated:  March 21, 2019                              Respectfully submitted,

                                                    */s/ Francis DiGiovanni*
                                                    Francis DiGiovanni, Esq. (pro hac vice)
                                                    francis.digiovanni@dbr.com
                                                    DRINKER BIDDLE & REATH LLP
                                                    222 Delaware Avenue, Suite 1410
                                                    Wilmington, DE 19801
                                                    Telephone:  (302) 467-4200

                                                    Neil D. Kodsi, Esq.
                                                    ndk@ndkodsilaw.com
                                                    Florida Bar No. 479349
                                                    THE LAW OFFICES OF NEIL D. KODSI
                                                    1666 J. F. Kennedy Causeway Suite 420
                                                    North Bay Village, Florida 33141
                                                    Telephone:  (786) 464-0841

                                                    Marc J. Kesten, Esq.
                                                    Legal@vpxsports.com
                                                    VITAL PHARMACEUTICALS, INC.
                                                    1600 North Park Drive
                                                    Weston, Florida 33326
                                                    Telephone: (954) 641-0570 (ext. 293)

                                                    *Counsel for Defendant*
                                                    *Vital Pharmaceuticals, Inc., d/b/a VPX*

## CERTIFICATE OF SERVICE

I certify that, on March 21, 2019, I caused a true and correct copy of the foregoing document to be served in the manner indicated on the following individuals:

*/s/ Francis DiGiovanni*
Francis DiGiovanni, Esq. (pro hac vice)
francis.digiovanni@dbr.com
DRINKER BIDDLE & REATH LLP

**Service List:**

**_Via CMECF and email:_**
David S. Brafman
Patricia Mary Flanagan
Akerman LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401
david.brafman@akerman.com
patti.flanagan@akerman.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:16-cv-60691-WJZ**

WERTEKS CLOSED JOINT STOCK
COMPANY, d/b/a WERTEKS
PHARMACEUTICAL COMPANY, and
THERMOLIFE INTERNATIONAL, LLC,

       Plaintiffs,

vs.

VITAMIN SHOPPE, INC. and VITAL
PHARMACEUTICALS, INC. d/b/a VPX,

       Defendants.

_____/

**DECLARATION OF FRANCIS DIGIOVANNI IN SUPPORT OF
DEFENDANT VITAL PHARMACEUTICALS, INC.'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(1) FOR LACK OF STANDING AND
SUPPORTING MEMORANDUM OF LAW**

I, Francis DiGiovanni, declare the following:

      1.     I am an attorney with the law firm of Drinker Biddle & Reath LLC, counsel for

Defendant Vital Pharmaceuticals, Inc. ("Vital") in the above-captioned action.  I am over 18 years

of age and have personal knowledge of the matters set forth herein.  I am admitted to practice in

Delaware and before this Court.  My office address is 222 Delaware Ave., Ste. 1410, Wilmington,

Delaware 19801-1621.  I submit this declaration in support of DEFENDANT VITAL

PHARMACEUTICALS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.

12(B)(1) FOR LACK OF STANDING AND SUPPORTING MEMORANDUM OF LAW, filed

contemporaneously herewith.

      2.     Attached hereto as Exhibit A is a true and correct copy of the license agreement

between ThermoLife International, LLC ("ThermoLife") and Werteks Closed Joint Stock

Company d/b/a Werteks Pharmaceutical Company ("Werteks," also known as "Vertex"), produced as a redacted document in this litigation prior to the Court's stay as Bates Nos. TL000365-TL000377.  The license agreement was also provided to Marc J. Kesten, Esq., in-house counsel of Vital, on April 7, 2014, by counsel representing ThermoLife in *ThermoLife International LLC v. Vital Pharmaceuticals, Inc.*, C.A. No. 2:14-cv-02449-RSWL-AGR (C.D. Cal.).

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 21, 2019, in Wilmington, Delaware.

*/s/ Francis DiGiovanni*
Francis DiGiovanni, Esq. (pro hac vice)
francis.digiovanni@dbr.com
DRINKER BIDDLE & REATH LLP

# Exhibit A

| EXCLUSIVE PATENT LICENSE AGREEMENT | СОГЛАШЕНИЕ ОБ ИСКЛЮЧИТЕЛЬНОЙ ПАТЕНТНОЙ ЛИЦЕНЗИИ |
|---|---|
| This Agreement is signed between «VERTEX» Closed Joint Stock Company, doing business as «VERTEX» Pharmaceutical Company ("VERTEX"), a corporation having a <u>Mail Address:</u> Russia 199106, Saint Petersburg; Vasikevski Island, 24 line, 27A, <br><br>*Tel/fax.*: +7 (812) 329-30-41 <br><br> <u>Juridical address:</u> Russia, 196135, Saint Petersburg; Moskovski district, Tipanova Street, Bldg 8, apart.100, <br><br> <u>Bank information:</u> <br><br> UniCredit Bank ZAO, St. Peterburg, Russia. <br><br> 48/2, Fontanka emb., St. Peterburg, Russia, 191025 <br><br> SWIFT Code: IMBKRUMMPET <br><br> Acc № 40702840800024651967 <br><br> Trans.acc. №40702840100024651968 <br><br><br> and <br><br> ThermoLife International, LLC ("ThermoLife"), a corporation having a place of business at 1811 Ocean Front Walk in Venice, California, 90291. <br><br><br> "VERTEX" and "ThermoLife" together hereafter in the text are referred as"parties". The Agreement is effective on March 03, 2014 (" "Effective Date"). | Настоящее Соглашение заключено между Закрытым Акционерным обществом "ВЕРТЕКС", действующим как Фармацевтическая компания "ВЕРТЕКС" ("ВЕРТЕКС"), <br><br> <u>Почтовый адрес:</u> Россия, 199106, г. Санкт-Петербург, Василевский остров, 24-я линия, д. 27А, <br><br> <u>Тел/факс:</u> +7 (812) 329-30-41 <br><br> <u>Юридический адрес:</u> Россия, 196135, Санкт-Петербург Московский р-н, ул. Типанова,  д. 8, кв.100, <br><br> <u>Банковские реквизиты:</u> <br><br> ЗАО ЮниКредит Банк <br><br> 191025, Россия, Санкт-Петербург, наб. р Фонтанки, 48/2 <br><br> СВИФТ: IMBKRUMMPET <br><br> Тек. вал. сч.  №40702840800024651967 <br><br> Транз. счет. №40702840100024651968 <br><br><br> и <br><br> ООО "ТермоЛайф Интернэшнл" ("ТермоЛайф"), корпорацией с главным офисом по адресу Ocean Front Walk, Venice, Калифорния, 90291. <br><br><br> "ВЕРТЕКС" и "ТермоЛайф" совместно далее именуются "Стороны". Настоящее Соглашение вступает в силу с 03 марта 2014 г ("дата вступления в силу"). |
| **1.   DEFINITIONS** | **1.   ОПРЕДЕЛЕНИЯ** |
| 1.1   "Exclusive" means that "VERTEX"will not grant further licenses under the Licensed Patent in the Licensed Field of Use in the Licensed Territory. | 1.1   "Исключительная" означает, что «ВЕРТЕКС» не имеет права выдавать другие лицензии по Патенту, составляющему предмет лицензии, в Области действия лицензии  на Лицензионной территории. |
| 1.2   "Licensed Field of Use" means nutraceuticals, foods, and pharmaceuticals. | 1.2   "Область действия лицензии" означает нутрицевтики, пищевые продукты  и фармацевтические препараты. |
| 1.3   "Licensed Territory" means United States of America. | 1.3   "Лицензионная территория" означает Соединенные Штаты Америки. |
| 1.4   "Licensed Patent" means United States Patent No. 8,350,077. | 1.4   Патент, составляющий "Предмет лицензии" означает патент США № 8,350,077. |
| 1.5   "Licensed Product" means a product or part of a product | 1.5   "Лицензионный продукт" означает продукт или часть |

TL000365

In the Licensed Field of Use the making using, importing or selling of which, absent this license, infringes, induces infringement, or contributes to infringement of a Licensed Patent.

1.6 "Licensed Territory" means the United States of America.

1.7 "Net Sales" means all gross revenue derived by "ThermoLife" or sublicensees from Licensed Product. Net Sales excludes the following items (but only as they pertain to the making, using, importing or selling of Licensed Products, are included in gross revenue, and are separately billed):

    (A) import, export, excise and sales taxes, and custom duties paid by "ThermoLife";

    (B) costs of insurance, packing, and transportation from the place of manufacture to the customer's premises or point of installation paid by "ThermoLife";

    (C) costs of installation of nutraceuticals and pharmaceuticals at the place of use paid by "ThermoLife".

1.8 ""VERTEX"Indemnitees"" means "VERTEX" and its respective officers, employees, directors, and agents.

1.9 "Sublicense" means any agreement between 'ThermoLife " and a third party that contains a grant to "VERTEX"s Licensed Patent; however, an agreement to make, have made, use or sell Licensed Products on behalf of " ThermoLife" is not considered a Sublicense to manufacture, use or sale of the licensed product of "VERTEX" outside the licensed area without the written consent of "VERTEX".

| 2. | GRANT |
|---|---|
| 2.1 | Grant. Subject to the terms and conditions of this |

продукта в Области действия лицензии, производство, импорт или продажа которого без настоящей лицензии нарушает, вызывает нарушение или способствует нарушению Патента, составляющего предмет лицензии.

1.6 "Лицензионная территория" означает Соединенные Штаты Америки.

1.7 "Чистая сумма продаж" означает всю валовую выручку, полученную компанией "ТермоЛайф" или сублицензиатами от продажи Лицензионного продукта. В чистую сумму продаж не входит следующее (только, если оно относятся к производству, использованию, импорту или продаже Лицензионных продуктов, включается в валовую выручку, и счет по нему выставляется отдельно):

    (А) налоги на импорт, экспорт, акциз и продажу, а также наможенные пошлины, оплачиваемые "ТермоЛайф";

    (В) затраты на страхование, упаковку и транспортировку от места производства до помещений заказчика или места установки, оплачиваемые "ТермоЛайф";

    (С) затраты "ТермоЛайф" на подготовку к производству нутрицевтиков и фармацевтических препаратов, относящихся к лицензионному продукту.

1.8 "Застрахованные лица "ВЕРТЕКС" означает ЗАО "ВЕРТЕКС" вместе со всеми его должностными лицами, служащими, директорами и агентами.

1.9 "Сублицензия" означает любое Соглашение между "ТермоЛайф" и третьей стороной, которое содержит предоставление лицензируемого Патента "ВЕРТЕКС", однако "ТермоЛайф" не вправе заключать Сублицензию на производство, использование или продажу лицензированного продукта "ВЕРТЕКС" вне лицензионной территории без письменного согласия "ВЕРТЕКС".

| 2. | ПРЕДМЕТ ЛИЦЕНЗИИ |
|---|---|
| 2.1 | Предмет лицензии. В соответствии с условиями и |

TL000366

Agreement, "VERTEX" grants "ThermoLife" an exclusive license under the Licensed Patent in the Licensed Field of Use to make, have made, use, import, offer to sell and sell Licensed Product in the Licensed Territory.

2.2 **Exclusivity.** The license is Exclusive, including the right to Sublicense under Article 2, in the Licensed Field of Use beginning on the Effective Date. By this license, it is "VERTEX"'s intention to grant, and "VERTEX" hereby does grant, "ThermoLife" the right to sue any third party for patent infringement, without the necessity of adding "VERTEX" to that suit. "VERTEX" also grants "ThermoLife" the right to collect damages for infringement predating and postdating the Effective Date.

2.3 **Specific Exclusion.** "VERTEX" does not:

(A) grant to "ThermoLife" any other licenses, implied or otherwise, to any patents or other rights of "VERTEX" other than those rights granted under Licensed Patent;

(B) commit to "ThermoLife" to bring suit against third parties for infringement; and

(C) agree to furnish to ThermoLife any technology or technological information or to provide ThermoLife with any assistance.

**3.  SUBLICENSING**

3.1 **Permitted Sublicensing.** "ThermoLife" may grant non-exclusive Sublicenses in the Licensed Field of Use, granting sublicensees the right to make, have made, use, import, offer to sell and sell Licensed Product in the

---

положениями настоящего Соглашения, "ВЕРТЕКС" предоставляет "ТермоЛайф" исключительную лицензию на Патент, составляющий предмет лицензии, в Области действия лицензии с правом производить, использовать, импортировать, предлагать и продавать Лицензионные продукты на Лицензионной территории.

2.2 **Исключительность.** Лицензия носит исключительный характер, включая право сублицензирования в соответствии со статьей 2, в Области действия лицензии, начиная с Даты вступления соглашения в силу. По этой лицензии, "ВЕРТЕКС" имеет намерение предоставить и настоящим предоставляет "Термолайф" право подавать в суд на любые третьи стороны за нарушение патентных прав, без обязательного включения «ВЕРТЕКС» в иск. «ВЕРТЕКС» также предоставляет "ТермоЛайф" право осуществлять взыскание ущерба за нарушения, предшествующие, или датированные более поздним числом, чем Дата вступления соглашения в силу.

2.3 **Особые исключения.** Лицензия не включает в себя следующее:

(А) Предоставление "ТермоЛайф" лицензий, подразумеваемо или иным образом, на какие-либо иные патенты или другие права ВЕРТЕКС, за исключением прав, предоставляемых по Патенту, составляющему предмет лицензии;

(В) Обязательство "ТермоЛайф" подавать в суд на третьи стороны за нарушения;

(С) Обязательство "Вертекс" предоставлять "ТермоЛайф" какие-либо технологии или техническую информацию, либо каким-либо оказывать помощь "ТермоЛайф".

**3.  СУБЛИЦЕНЗИРОВАНИЕ**

3.1 **Допустимое Сублицензирование.** "ТермоЛайф" имеет право предоставлять Сублицензиатам неисключительные Сублицензии в Области действия лицензии, дающие сублицензиатам право

TL000367

Licensed Territory in the absence of objection "VERTEX" specific sublicense.

3.2 **Copy of Sublicenses and Sublicensee Royalty Reports.** "ThermoLife" will submit to "VERTEX" a copy of each Sublicense, any subsequent amendments, and all copies of sublicensees' royalty reports before signing it and all copies of the reports on the payment of sub-licensees of deductions within 30 days after the end of each calendar year.

3.3 **Sublicensing Royalty.** Any royalties or other monies collected from sublicensees by "ThermoLife" will be deemed Net Sales, subject to earned royalties as set forth in Article 4.2.

| 4. | PAYMENTS |
|---|---|

4.1 **Issue Royalty Payment.** "ThermoLife" will pay to " VERTEX" a noncreditable, nonrefundable license issue royalty of ███████████████████ USA dollars within ten (10) days after signing this Agreement.

4.2 **Earned Royalty.** "ThermoLife" shall pay to "Vertex" an earned royalty of ██ of net sales, whether from the sale of Licensed Products by "ThermoLife" or its sublicensees or royalties for the sale of sub-licenses.

4.3 **Currency.** "ThermoLife" will calculate and pay the royalty on sales in currencies other than U.S. Dollars using the appropriate foreign exchange rate for the currency quoted by the *Wall Street Journal* on the close of business on the last banking day of each calendar year. "ThermoLife" will make royalty payments to "VERTEX" in U.S. Dollars.

4.4 **Royalty Payment and Report.** "ThermoLife" will submit to "VERTEX" a written report (even if there are no sales) and an earned royalty payment within 30 days after the

---

производить, использовать, импортировать, предлагать или продавать Лицензионные продукты на Лицензионной территории при отсутствии возражений "ВЕРТЕКС" по конкретной сублицензии

3.2 *Копия сублицензий и отчеты об уплате сублицензиатами отчислений.* "ТермоЛайф" предоставляет "ВЕРТЕКС" копию каждой Сублицензии и любые последующие поправки перед ее подписанием и все копии отчетов об уплате сублицензиатами отчислений, в течение 30 дней после окончания каждого календарного года.

3.3 *Сублицензионные отчисления.* Любые отчисления или другие денежные средства, полученные от сублицензиатов "Термолайф", считаются чистой суммой продаж, из расчета отчисления от выручки, как изложено в статье 4.2.

| 4. | ПЛАТЕЖИ |
|---|---|

4.1 *Отчисление за выдачу. Поушальный платеж.* "ТермоЛайф" оплачивает "ВЕРТЕКС" единовременное, невозмещаемое отчисление за выдачу лицензии в размере $25,000 (двадцать пять тысяч) долларов США в течение 10 (десяти) дней после подписания настоящего Соглашения.

4.2 *РОЯЛТИ.* ТермоЛайф" выплачивает "ВЕРТЕКС" отчисления за выручку в размере 2% от Чистой суммы продаж, будь то от продажи Лицензионных продуктов компанией "ТермоЛайф" или ее Сублицензиатами или лицензионные платежи за продажу сублицензий.

4.3 *Валюта.* "ТермоЛайф" производит выплату отчислений "ВЕРТЕКС" в Долларах США. *Если* "ТермоЛайф" рассчитывает отчисления от продаж в валюте, отличной от Доллара США, то используется соответствующий обменный курс, указанный в "WallStreet Journal" на конец рабочего дня последнего банковского дня каждого календарного года.

4.4. *Выплата отчислений и отчет.* "ТермоЛайф" предоставляет "ВЕРТЕКС" письменный отчет

TL000368

end of each calendar year. This report will include the number, description, and aggregate Net Sales of Licensed Product during the completed calendar year. The report will include an overview of the process and documents relied upon to permit "VERTEX" to understand how the earned royalties are calculated. With each report "ThermoLife" will include any earned royalty payment due "VERTEX" for the completed calendar year (as calculated under Article 4.2).

4.5   **Accounting.** "ThermoLife" will maintain records showing manufacture, importation, sale, and use of a Licensed Product for 10 years from the date of sale of that Licensed Product.  Records will include general-ledger records showing cash receipts and expenses, and records that include: production records, customers, invoices, serial numbers, and related information in sufficient detail to enable "VERTEX" to determine the royalties payable under this Agreement.

4.6   **Audit by "VERTEX".**  ThermoLife will allow «VERTEX» or its designee, at its own cost, to examine "ThermoLife's" records to verify payments made by ThermoLife"under this Agreement.

| 5. | **WARRANTIES  ANDEXCLUSIONS AND NEGATION OF WARRANTIES** |
|---|---|
| 5.1 | **Warranties** . "ThermoLife" takes all reasonable steps to use Licensed Patent. |
| 5.2 | **Negation of Warranties.** "VERTEX" provides "ThermoLife " the rights granted in this Agreement AS IS and WITH |

(даже если продаж нет) и производит выплату отчислений от выручки в течение 30 дней после окончания каждого календарного года. В этот отчет должны входить номер, описание и общая Чистая сумма продаж Лицензионных продуктов за прошедший календарный год. В отчет входит обзор процесса и документов, которые демонстрируют "ВЕРТЕКС" информацию о способе расчета отчислений от выручки. Вместе с каждым отчетом "ТермоЛайф" выплачивает отчисления от выручки, подлежащие уплате "ВЕРТЕКС" за прошедший календарный год (в соответствии с расчетом, представленным в статье 4.2).

4.5. **Учет.** "ТермоЛайф" ведет бухгалтерский учет, отображающий производство, импорт, продажу и использование Лицензионных продуктов в течение 10 лет с момента продажи Лицензионных продуктов. Документы включают бухгалтерские регистры с указанием полученных сумм и расходов, а также записи по производству, записи заказчиков, счета-фактуры, серийные номера и сопутствующую достаточно подробную информацию, чтобы ЗАО "ВЕРТЕКС" могло определить размер отчислений, подлежащих выплате по настоящему соглашению.

4.6. **Аудит со стороны "ВЕРТЕКС".** "ТермоЛайф" не препятствует "ВЕРТЕКС" или назначенным "ВЕРТЕКС" лицам в проведении, за их счет, изучения отчетности "ТермоЛайф" для проверки платежей, производимых "ТермоЛайф" по условиям настоящего Соглашения

| 5. | **ГАРАНТИИ. ИСКЛЮЧЕНИЯ И ОТРИЦАНИЕ ГАРАНТИИ** |
|---|---|
| 5.1 | **Гарантии.** "ТермоЛайф" предпринимает все разумные меры по использованию лицензируемого патента. |
| 5.2 | **Отрицание гарантии.** "ВЕРТЕКС" предоставляет "ТермоЛайф" права, передаваемые настоящим |

TL000369

ALL FAULTS. "VERTEX" makes no representations and extends no warranties of any kind, either express or implied.  Among other things, "VERTEX"  disclaims any express or implied warranty:

(A) of merchantability, of fitness for a particular purpose,

(B) of non-infringement or

(C) arising out of any course of dealing.

5.3   **No Representation of Licensed Patent.** "ThermoLife" also acknowledges that "VERTEX" does not represent or warrant:

(A) the validity or scope of any Licensed Patent, or

(B) that the exploitation of Licensed Patent will be successful.

|  | 6.   INDEMNITY |
|---|---|

6.1   **Indemnification.** ThermoLife will indemnify, hold harmless, and defend all "VERTEX" Indemnitees against any claim of any kind arising out of or related to the exercise of any rights granted "ThermoLife" under this Agreement or the breach of this Agreement by ThermoLife.

6.2   **No Indirect Liability.**  Neither party shall be liable for any special, consequential, lost profit, expectation, punitive or other indirect damages in connection with any claim arising out of or related to this Agreement, whether grounded in tort (including negligence), strict liability, contract, or otherwise.

6.3   **Workers' Compensation.** "ThermoLife" will comply with all statutory workers' compensation and employers' liability requirements for activities performed under this Agreement.

---

Соглашением, как есть со всеми рисками. "ВЕРТЕКС" не дает никаких заверений и гарантий любого рода, явных или подразумеваемых. Среди прочего, "ВЕРТЕКС" отказывается от любой явной или подразумеваемой гарантии в случае:

(A) непригодности товара для определенной цели,

(B) нарушения, или

(C) вытекающей из любых коммерческих сделок.

5.3   **Отсутствие заверения Патента, составляющего предмет лицензии.** "ТермоЛайф" также признает, что «ВЕРТЕКС» не дает заверений или гарантий, касающихся:

(A) действительности области применения любого Патента, составляющего предмет лицензии, или

(B) успешности использования Патента, составляющего предмет лицензии.

|  | 6.   КОМПЕНСАЦИЯ |
|---|---|

6.1   **Возмещение.**  «ТермоЛайф» возмещает, ограждает и защищает всех застрахованных лиц "ВЕРТЕКС" от ущерба, связанного с любыми претензиями любого рода, возникших из-за или в связи с осуществлением любых прав, предоставленных "ТермоЛайф" по условиям настоящего Соглашения, либо нарушения условий настоящего Соглашения со стороны "ТермоЛайф".

6.2   **Отсутствие косвенных финансовых обязательств.** Ни одна из сторон не несет ответственность за любые особые, косвенные, предсказуемые, штрафные, связанные с упущенной выгодой, иные косвенные убытки, связанные с любыми претензиями, возникшими из-за или в связи с настоящим Соглашением, будь то доказанное нарушение (включая халатность), безусловное обязательство, договор и т.д.

6.3   **Компенсация работникам.** "ТермоЛайф" соблюдает все предусмотренные компенсации работникам, и требования ответственности работодателя для видов деятельности, осуществляемых по настоящему Соглашению.

TL000370

| | | | |
|---|---|---|---|
| 6.4 | **Insurance.** During the term of this Agreement, "ThermoLife" will maintain Comprehensive General Liability Insurance, including Product Liability Insurance, with a reputable and financially secure insurance carrier to cover the activities of "ThermoLife" and its sublicensees. The insurance will provide minimum limits of liability of $5,000,000 and will include all "VERTEX" Indemnitees as additional insured's. Within 15 days of the Effective Date of this Agreement, "ThermoLife" will furnish a Certificate of Insurance evidencing primary coverage and additional insured requirements. "ThermoLife" will provide to "VERTEX" 30 days prior written notice of cancellation or material change to this insurance coverage. | 6.4 | **Страхование.** На весь срок действия настоящего Соглашения "ТермоЛайф" приобретает комплексное страхование общей ответственности, включая страхование ответственности за качество выпускаемой продукции, у страховой компании, имеющей хорошую репутацию и устойчивое финансовое положение, для покрытия деятельности "ТермоЛайф" и ее сублицензиатов. Страхование обеспечивает минимальный предел ответственности в $ 5,000,000 и распространяется на всех застрахованных лиц "ВЕРТЕКС" в качестве дополнительных застрахованных лиц. В течение 15 дней с момента вступления в силу настоящего Соглашения, "ТермоЛайф" предоставляет Страховое свидетельство, подтверждающее первичную страховую защиту и требования по дополнительным застрахованным лицам. "ТермоЛайф" предоставляет "ВЕРТЕКС" письменное уведомление за 30 дней до отмены или существенного изменения существующей страховой защиты. |
| **7.** | **MARKING** | **7.** | **МАРКИРОВКА** |
| | To the extent required by law, "ThermoLife" will mark Licensed Product with the number of any issued Licensed Patent. | | В той степени, в которой того требует закон, "ТермоЛайф" указывает на Лицензионной продукции номер выданного Патента, составляющего предмет лицензии. |
| **8.** | **PROSECUTION AND PROTECTION OF PATENTS** | **8.** | **ПРОЦЕДУРА ВЫДАЧИ ПАТЕНТА И ОХРАНА ПАТЕНТНЫХ ПРАВ** |
| 8.1 | **Patent Prosecution.** Following the Effective Date and subject to "VERTEX's" approval, "ThermoLife" will be responsible for preparing, filing, and prosecuting broad and extensive patent claims (including any interference or reexamination actions) for "VERTEX's" benefit in the Licensed Field of Use, within the Licensed Territory, and for maintaining the Licensed Patent. "VERTEX" will provide information, execute and deliver documents and do other acts as "ThermoLife" shall reasonably request from time to time. | 8.1 | **Процедура выдачи патента.** После наступления даты вступления в силу и получения одобрения "ВЕРТЕКС", "ТермоЛайф" несет ответственность за подготовку, подачу и процедуру поддержания широких патентных заявок (включая действия по изменению и пересмотру) в пользу "ВЕРТЕКС". "ВЕРТЕКС" предоставляет информацию, оформляет и доставляет документы, совершает иные действия, которые "ТермоЛайф" может обоснованно запрашивать в той степени, в которой они касаются патента по лицензии. |

TL000371

8.2 **Patent Costs.** Within 30 days after receiving a statement from "VERTEX", "ThermoLife" will reimburse "VERTEX" for all Licensed Patent's patenting expenses, including any interference or reexamination matters, incurred by " VERTEX" after the Effective Date and any annuity payments approved by "ThermoLife" prior to the Effective Date of Agreement.

8.3 **Infringement Suit.** "ThermoLife" has the right to institute suit against any infringer of a Licensed Patent. "ThermoLife" will diligently pursue the suit and "ThermoLife" will bear the entire cost of the litigation, including expenses and counsel fees. To the extent necessary, "ThermoLife" will keep "VERTEX" reasonably apprised of all developments in the suit. "VERTEX" may be named as a party only if necessary, and "VERTEX" consents to being added as a party to any suit, to be represented by "ThermoLife"'s counsel. If "VERTEX" is named as a party, "ThermoLife" will bear the costs of suit for "VERTEX", including expenses and counsel fees, and "ThermoLife" will exercise control over the prosecution of the suit.

8.4 **Recovery.** Any recovery from an infringement suit will be treated as Net Sales and subject to the earned royalty calculation set forth in Article 4.2, whether obtained by settlement, damages award, or otherwise, and regardless of such recovery's characterization in a settlement or award, such as a sublicense, payment past damages, estimated future damages, paid-up royalty, settlement, nuisance payment, etc. In calculating Net Sales stemming from any recovery from an infringement suit, all litigation costs and fees, including expenses and counsel fees, shall be deducted first, with such litigation costs and fees to be recovered by "ThermoLife" before

8.2 **Патентные издержки.** В течение 30 дней с момента получения заявления от "ВЕРТЕКС", "ТермоЛайф" обязан возместить "ВЕРТЕКС" все патентные издержки в отношении Патента, составляющего предмет лицензии, включая связанные с подачей и экспертизой патента любые расходы, понесённые "ВЕРТЕКС" с момента вступления соглашения в силу, любые пошлины, утверждённые "ТермоЛайф" до момента вступления в силу Соглашения.

8.3 **Иск о нарушении.** "ТермоЛайф" имеет право возбуждать иск против любого нарушителя лицензируемого Патента. "ТермоЛайф" будет прилагать все усилия к удовлетворению иска и выплачивает стоимость судебных разбирательств, включая расходы и оплату услуг адвоката. В необходимой степени "ТермоЛайф" уведомляет "ВЕРТЕКС" о развитии рассмотрения иска. "ВЕРТЕКС" может быть назван в качестве стороны только при необходимости, и "ВЕРТЕКС" соглашается на добавление себя в качестве стороны и представление своих интересов адвокатом "ТермоЛайф". Если "ВЕРТЕКС" назван в качестве стороны, "ТермоЛайф" несет все расходы, связанные с иском, за "ВЕРТЕКС", включая затраты и оплату услуг адвоката, и "ТермоЛайф» контролирует ход преследования по иску.

8.4 **Взыскание.** Любые расходы по иску о нарушении прав рассматриваются как чистая сумма продаж и подлежат отчислениям от выручки, рассчитываемой в соответствии со статьей 4.2, независимо от того, является это компенсацией за урегулирование иска, возмещением убытков или иного, независимо от договоренности или выплат, таких как сублицензии, возмещение прошлых убытков, убытков в будущем, уплаченных роялти, компенсаций, морального ущерба и т.д. При расчете чистой суммы продаж, вытекающей из любого взыскания по иску о нарушении, все расходы и затраты на судебное

TL000372

| | |
|---|---|
| the earned royalty (2% of Net Sales) is calculated. | разбирательство, включая затраты и оплату услуг адвоката, вычитаются в первую очередь, "Термо-Лайф" взыскивает расходы и затраты на судебное разбирательство перед расчетом отчислений с выручки  (2 % от чистой суммы продаж). |
| **9.     PERIODS OF VALIDITY AND TERMINATION** | **9.  СРОКИ ДЕЙСТВИЯ И ПРЕКРАЩЕНИЕ ДЕЙСТВИЯ** |
| 9.1   **Term.**  The Term of this Agreement shall be from the Effective Date to the expiration or invalidation of all claims of the Licensed Patent, unless terminated according to this Section. "VERTEX" has to reister this Agreement in the Federal Service for Intellectual Properly, Patents, Trademarks (Rospatent), Russia | 9.1   **Срок действия.** Настоящее Соглашение вступает в силу со дня его подписания Сторонами. "ВУРТУКС" должен зарегистрировать настоящее соглашение в Федеральной службе по интеллектуальной собственности, патентам, товарным знакам (Роспатент) России. |
| 9.2   **Termination by "ThermoLife.**  "ThermoLife" may terminate this Agreement by giving "VERTEX" written notice at least 90 days in advance of the effective date of termination selected by "ThermoLife".  In the event of such termination, "ThermoLife" will still owe "VERTEX" any earned royalties and related documentation due to " VERTEX", to be paid within 30 days after the date of termination and transmit the relevant documents "VERTEX". Thus "ThermoLife" loses all rights to use the patent and Licensed Product. | 9.2   **Расторжение со стороны "ТермоЛайф".** "ТермоЛайф имеет право расторгнуть настоящее Соглашение, направив письменное уведомление "ВЕРТЕКС", минимум за 90 дней до даты вступления в силу расторжения, выбранной "ТермоЛайф". В случае такого расторжения, "ТермоЛайф" обязан выплатить "ВЕРТЕКС" любые отчисления с выручки в течение 30 дней после даты расторжения, и передать соответствующие документы "ВЕРТЕКС". При этом "ТЕРМОЛАЙФ" теряет все права на использование патента и продукции по лицензии. |
| 9.3   **Termination by "VERTEX".** | 9.3   **Расторжение со стороны "ВЕРТЕКС".** |
| (A)   "VERTEX" may also terminate this Agreement if "~~ThermoLayf~~" (ThermoLife) has not paid any fee or does not provide the appropriate report, as well as in the case of breach of any provision of this Agreement by the "~~ThermoLayf~~" (ThermoLife). Thus "ThermoLife" loses all rights to use the patent and Licensed Product. | (A)   "ВЕРТЕКС" также вправе прекратить действие настоящего Соглашения в случае, если "ТермоЛайф" не выплатил какое-либо отчисление или не предоставил соответствующий отчет, а также в случае нарушения любого из положений настоящего Соглашения со стороны "ТермоЛайф". При этом  "ТЕРМОЛАЙФ" теряет все права на использование патента и продукции по лицензии. |
| (B)   Termination under this Article 9.3 will take effect 30 days after written notice by "VERTEX" unless "ThermoLife" remedies the problem in that 30-day period. | (B)   Расторжение согласно статье 9.3 вступает в силу через 30 дней после письменного уведомления "ВЕРТЕКС", за исключением случая, когда "ТермоЛайф" устранил  проблему в 30-дневный срок. |
| **10.   ASSIGNMENT** | **10.  ПЕРЕУСТУПКА** |
| 10.1   **Permitted Assignment by "ThermoLife".** "ThermoLife may | 10.1  **Допустимая переуступка "ТермоЛайф".** |

TL000373

assign this Agreement as part of a sale or change of control, regardless of whether such a sale or change of control occurs through an asset sale, stock sale, merger or other combination, or any other transfer of:

(A) "ThermoLife's" entire business; or

(B) that part of "ThermoLife'"s business that exercises all rights granted under this Agreement.

10.2 **Any Other Assignment by "ThermoLife".** Any other attempt to assign this Agreement by "ThermoLife" is null and void.

10.3 **Conditions of Assignment.** Prior to any assignment, the following conditions must be met:

(A) "ThermoLife" must give "VERTEX" 30 days prior written notice of the assignment, including the new assignee's contact information; and

(B) the new assignee must agree in writing to "VERTEX" to be bound by this Agreement.

10.4 **After the Assignment.** Upon a permitted assignment of this Agreement, "ThermoLife" will be released of liability under this Agreement and the term "ThermoLife" in this Agreement will mean the assignee.

| 11. | DISPUTE RESOLUTION |

11.1 **Dispute Resolution by Arbitration.** Any dispute between the parties regarding any payments made or due under this Agreement will be settled by arbitration in accordance with the JAMS Arbitration Rules and Procedures. The parties are not obligated to settle any other dispute that may arise under this Agreement by arbitration.

11.2 **Request for Arbitration.** Either party may apply to the

---

"ТермоЛайф" имеет право переуступить настоящее Соглашение случае продажи Компании, смены руководства, независимо от того, произошла ли такая продажа или смена руководства в результате продажи активов, продажи акций, слияния или иной комбинации, либо любой другой передачи:

(A) всего бизнеса "ТермоЛайф"; или

(B) той части бизнеса "ТермоЛайф", которая использует все права по настоящему Соглашению.

10.2 *Любые другие переуступки "ТермоЛайф".* Любые другие попытки переуступить настоящее Соглашение со стороны "ТермоЛайф" переуступить настоящее Соглашение являются недействительными.

10.3 *Условия переуступки.* Перед осуществлением любой переуступки должны быть выполнены следующие условия:

(A) "ТермоЛайф" должен предоставить "ВЕРТЕКС" письменное уведомление о переуступке за 30 дней, с указанием контактной информации правопреемника.

(B) новый правопреемник должен предоставить "ВЕРТЕКС" письменное согласие принять обязательства по настоящему Соглашению.

10.4 *После переуступки.* После разрешенной переуступки настоящего Соглашения с "ТермоЛайф" снимается финансовая ответственность по условиям настоящего Соглашения, а термин "ТермоЛайф" в настоящем Соглашении означает правопреемника.

| 11. | РАЗРЕШЕНИЕ СПОРОВ |

11.1 *Разрешение споров в арбитражном порядке. Любой* спор между сторонами, касающийся совершенного или подлежащего уплате платежа по настоящему Соглашению, разрешается в арбитражном порядке в соответствии с Регламентом и процедурами арбитража JAMS. Стороны не обязаны разрешать любой спор, возникающий в связи с настоящим Соглашением, в арбитражном порядке.

11.2 *Обращение в арбитраж. Любая из сторон может*

TL000374

court arbitrary. "VERTEX" and "ThermoLife" will mutually agree in writing on a third party arbitrator within 30 days of the arbitration request. The arbitrator's decision will be final and no appealable and may be entered in any court having jurisdiction.

11.3 **Discovery.** The parties will be entitled to discovery as if the arbitration were a civil suit in the California Superior Court. The arbitrator may limit the scope, time, and issues involved in discovery.

11.4 **Place of Arbitration.** The arbitration will be held in California, USA, unless the parties mutually agree in writing to another place.

## 12. NOTICES

12.1 **All Notices.** All notices under this Agreement are deemed fully given when written, addressed, and sent as follows:

All notices to "ThermoLife" are mailed or emailed to:

**Name:** Ron Kramer
**Address:** ThermoLife International, LLC
1811 Ocean Front Walk
Venice, California, 90291
**Email:** ron@thermolife.com

All notices to "VERTEX" are mailed or emailed to:

**Name:** Dr. Olga Veselkina
**Address:** Building No. 27 A, 24th Lane,
Vasilevsky Ostrov
Saint Petersburg, Russia, 199106
**Email:** OVeselkina@vertex.spb.ru

Either party may change its address with written notice to the other party within ten (10) days after such change.

## 13. MISCELLANEOUS

---

обратиться в арбитражный суд. "ВЕРТЕКС" и "ТермоЛайф" обоюдно соглашаются в выборе третьей стороны на роль арбитра в течение 30 дней с момента обращения в арбитраж. Решение арбитра окончательно и не подлежит обжалованию, и вступает в силу в любом суде соответствующей юрисдикции.

11.3 **Раскрытие.** Стороны имеют право на обращение с гражданским иском в Верховный суд Калифорнии. Арбитр может ограничить объем, время и вопросы, подлежащие раскрытию.

11.4 **Место арбитража.** Арбитражное разбирательство проходит в арбитражном суде Калифорнии, США, если стороны взаимно не договариваются в письменной форме о другом месте.

## 12. УВЕДОМЛЕНИЯ

12.1 **Все уведомления.** Все уведомления по настоящему Соглашению считаются предоставленными если они выполнены в письменной форме и направлены по следующим адресам:

Все уведомления, направляемые "ТермоЛайф" по почте или электронной почте:

**Контактное лицо:** Ron Kramer (РонКрамер)
**Адрес:** ООО "ТермоЛайф Интернэшнл"
1811 Ocean Front Walk
Venice, Калифорния, 90291
**Эл. почта:** ron@thermolife.com

Все уведомления, направляемые "ВЕРТЕКС" по почте или электронной почте:

**Контактное лицо:** Д-р Ольга Веселкина
**Адрес:** Дом 27 А, 24 Линия,
Васильевский остров,
Санкт-Петербург, Россия, 199106
**Эл. почта:** OVeselkina@vertex.spb.ru

Каждая из сторон может изменить свой адрес, предоставив письменное уведомление второй стороне в течение 10 (десяти) дней после такого изменения.

## 13. ПРОЧИЕ ПОЛОЖЕНИЯ

TL000375

13.1   **Waiver.**  No term of this Agreement can be waived except by the written consent and signature of "ThermoLife" and "VERTEX."

13.2   **Choice of Law.**  This Agreement and any dispute arising under it is governed by the laws of the State of California, United States of America, applicable to agreements negotiated, executed, and performed within California.

13.3   **Entire Agreement.** The parties have read this Agreement and agree to be bound by its terms, and further agree that it constitutes the complete and entire agreement of the parties and supersedes all previous communications, oral or written, and all other communications between them relating to the license and to the subject hereof. This Agreement may not be amended except by writing executed by authorized representatives of both parties. No representations or statements of any kind made by either party, which are not expressly stated herein, will be binding on such party.

13.4   **Exclusive Forum.**  The state and federal courts of the Central District of California, United States of America, provide the exclusive forum for any court action between the parties relating to this Agreement.  "ThermoLife" submits to the jurisdiction of such courts, and waives any claim that such a court lacks jurisdiction over " ThermoLife" or constitutes an inconvenient or improper forum.

13.5   **Headings.**  No headings in this Agreement affect its interpretation.

13.6   **Electronic Copy.** The parties to this document agree that a copy of the original signature (including an electronic copy) may be used for any and all purposes for which the original signature may have been used.  The parties

13.1   **Отказ от прав.** Ни одно условие настоящего Соглашения не может быть отклонено, за исключением случая письменного согласия сторон.

13.2   **Применимое право.** Настоящее Соглашение и любой спор, возникающий по его условиям, регулируется законами штата Калифорния Соединенных Штатов Америки, применимыми к Соглашениям, заключаемым, исполняемым, и осуществляемым в пределах Калифорнии.

13.3   **Полнота Соглашения.**  Стороны прочли настоящее Соглашение и соглашаются полностью соблюдать все его условия, а также соглашаются, что оно составляет полное Соглашение, которое заменяет все предшествующие договоренности, устные или письменные, и все другие договоренности между ними, касающиеся лицензии  и ее предмета. Поправки в настоящее Соглашение могут вноситься только в письменной форме уполномоченные представители обеих сторон. Никакие заверения или заявления любого рода, сделанные любой из сторон, не оговореные явно в настоящем документе, не являются обязательными.

13.4   **Исключительная подсудность.**  Государственные и федеральные суды, обладающие юрисдикцией в отношении "ВЕРТЕКС", штат Калифорния, Соединенные Штаты Америки, предоставляют исключительную подсудность для любого судебного иска между сторонами в отношении настоящего Соглашения. "ТермоЛайф" подчиняется юрисдикции таких судов, и отказывается от любых претензий в отношении недостаточности юрисдикции над «ТермоЛайф» у таких судов, либо предоставления неудобного или ненадлежащего места подсудности.

13.5   **Заголовки.** Никакие заголовки, содержащиеся в данном соглашении не влияют на его толкование.

13.6   **Электронная копия.** Стороны соглашаются, что копия оригинала с подписью (включая электронную копию) может использоваться для любых целей, для которых используется оригинал с подписями.

TL000376

| | |
|---|---|
| original signature may have been used.  The parties further waive any right to challenge the admissibility or authenticity of this document in a court of law based solely on the absence of an original signature. | для которых используется оригинал с подписями. Стороны также отказываются от любых прав оспаривать достаточность или подлинность настоящего Соглашения  в суде, основываясь лишь на отсутствии оригинала с подписями. |
| The parties execute this Agreement in duplicate originals by their duly authorized officers or representatives. | Стороны заключают настоящее Соглашение в двух экземплярах посредством своих уполномоченных должностных лиц или представителей. |
| This Agreement is written both in English and Russian. In the event of any conflict between the Russian version and the English version, the English version shall prevail. | Соглашение составлено на английском и русском языках. В случае расхождения англоязычной и русскоязычной версии Соглашения, преимущественную силу будет иметь английская версия. |

| | |
|---|---|
| "VERTEX" CLOSED JOINT STOCK COMPANY | ЗАКРЫТОЕ АКЦИОНЕРНОЕ ОБЩЕСТВО "ВЕРТЕКС" |
| Signature | Подпись |
| Name:  GeorgyPobelyanskiy | ФИО:        Георгий Поберянский |
| Title:   General Director | Должность:  Генеральный директор |
| Date:   March 11, 2014 | Дата:       11 марта, 2014 г. |
| THERMOLIFE INTERNATIONAL, LLC | ООО "ТЕРМОЛАЙФ ИНТЕРНЭШНЛ" |
| Signature | Подпись |
| Name:   Ron Kramer | ФИО:        Ron Kramer (Рон Крамер) |
| Title:   President | Должность:  Президент |
| Date:    March 11, 2014 | Дата:       11 марта, 2014 |

ThermoLife International APPROVED

ThermoLife International APPROVED

TL000377

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:16-cv-60691-WJZ

WERTEKS CLOSED JOINT STOCK
COMPANY D/B/A/ WERTEKS
PHARMACEUTICAL COMPANY and
THERMOLIFE INTERNATIONAL, LLC,

                  Plaintiffs,

v.

VITAMIN SHOPPE, INC. and VITAL
PHARMACEUTICALS, INC.,

                  Defendants.

**[PROPOSED] ORDER GRANTING MOTION TO DISMISS**

The Court, having reviewed the submissions regarding Defendant Vital Pharmaceuticals, Inc.'s ("Vital") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), it is hereby ORDERED:

The Motion is GRANTED.

Plaintiff ThermoLife International, LLC's claims are hereby DISMISSED with prejudice and all pending motions are denied as moot.  Defendants' counterclaims are hereby DISMISSED without prejudice.

SO ORDERED this _____ day of _____, 2019.

_____
United States District Judge

1